AO 91 (Rev. 11/11) Criminal Complaint                                    C&W No. 20-107 (AUSA Jessica Rice)

# UNITED STATES DISTRICT COURT
для the
Eastern District of Pennsylvania

| | |
|---|---|
| United States of America<br>v.<br><br>KENNETH L. HUGGINS, JR.,<br>PATRICE HAWTHORNE<br><br>*Defendant(s)* | Case No.<br>20-MJ-1606 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___see attached Affidavit___ in the county of ___Philadelphia___ in the ___Eastern___ District of ___Pennsylvania___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1349 | Conspiracy to commit mail fraud |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

s/ John Christopher Vacanti
*Complainant's signature*

John Christopher Vacanti, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/1/2020

*Judge's signature*

City and state: ___Allentown, Pennsylvania___   Hon. Henry S. Perkin, U.S. Magistrate Judge
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Magistrate No. 20-1606 |
| v. | ) | |
| KENNETH L. HUGGINS, JR., | ) | **[UNDER SEAL]** |
| PATRICE HAWTHORNE | ) | (18 U.S.C. § 1349) |

### AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, John Christopher Vacanti, being duly sworn, state as follows:

### INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been since July 2017. I am authorized to investigate violations of federal law and to execute arrests and search and seizure warrants. I am currently assigned to the Philadelphia Field Office, where I investigate public corruption, election crimes, labor racketeering, fraud against the government, and complex financial crimes. I have participated in a variety of criminal investigations, during the course of which I have interviewed witnesses, conducted physical surveillance, listened to consensual recordings, executed search warrants and arrests, and reviewed records, including bank records, phone records, invoices, and other business records. I am currently working on a task force with other federal agencies, including the United States Department of Labor (DOL), investigating CARES Act fraud, including unemployment insurance fraud and identity theft, crimes which have increased dramatically as a consequence of the passage of 2020 legislation designed to provide aid to citizens negatively affected by the ongoing pandemic.

2. I make this Affidavit in support of a criminal complaint charging KENNETH L. HUGGINS, JR. (HUGGINS) and PATRICE HAWTHRONE (HAWTHORNE) with conspiracy to commit mail fraud, in violation of Title 18, United States Code, Section 1349.

3. Specifically, as set forth below, I have probable cause to believe that HUGGINS and HAWTHORNE knowingly conspired to commit mail fraud by filing fraudulent applications for monetary benefits on behalf of incarcerated individuals under the Pandemic Unemployment Assistance (PUA) program, described below.

4. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant and does not set forth all of my knowledge about this matter

## BACKGROUND

5. On March 13, 2020, the President declared the ongoing COVID-19 pandemic to be an emergency under Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act.

6. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) was signed into law. The CARES Act created the PUA program, which provides unemployment benefits to individuals not eligible for regular unemployment compensation or extended unemployment benefits.

7. The PUA program is administered by the various states, including the Commonwealth of Pennsylvania, but its benefits are funded in part by the federal government. In Pennsylvania, the Pennsylvania Department of Labor and Industry (PA DLI) administers the PUA program.

8. According to the PA DLI, a PUA claim must be made online via the PUA website, https://pua.benefits.uc.gov. The applicant must enter personal identification information, including name, date of birth, social security number, email address, telephone number, and a

physical address. An applicant must also answer a series of questions that enable the PA DLI to determine the applicant's eligibility and payment amount.

9. An applicant is only eligible to receive weekly PUA benefits if he is unemployed for reasons related to the COVID-19 pandemic. The applicant must certify, under penalty of perjury, that he is able to go to work each day and, if offered a job, the applicant must be able to accept it. An applicant must read and understand the PUA Compensation Handbook, which indicates that any earnings must be reported for each week a person works.

10. If the PA DLI approves an application for PUA benefits, the benefits recipient will receive benefits in the form of checks, electronic fund transfers, or debit cards, and the checks and debit cards are mailed via the United States Postal Service to the physical address that appeared on the application.[1]

## PROBABLE CAUSE

11. Agents on the COVID Fraud Task Force learned of various inmates at Chester County Prison (CCP) in West Chester, Pennsylvania committing PUA fraud after a criminal investigator at CCP first reached out to DOL in July 2020, asking to whom he could report the fact that inmates in custody were recorded discussing PUA fraud.

12. Incarcerated inmates are not eligible for PUA benefits, both because they are not out of work as a consequence of COVID-19, and also because they are not immediately available to work, should work be offered to them. Further, on a periodic basis, individuals collecting PUA benefits need to recertify with the State of Pennsylvania that they are still unemployed and

---

[1] To combat fraud in the PUA program, Pennsylvania began issuing PUA payments via a prepaid VISA debit card at some point in June 2020. As of the date of this Affidavit, Pennsylvania is issuing the payments via VISA prepaid debit card.

3

available to work in order to continue receiving weekly benefits after the initial claim is made and granted by the State, based on the averments, made under oath, in the initial application.

13. In August 2020, agents from the FBI, the Internal Revenue Service (IRS), and the U.S. Department of Labor, Office of the Inspector General, obtained PUA claims data for an individual named KENNETH L. HUGGINS, JR. Based on his CCP Commitment Sheet, HUGGINS entered CCP custody in January 2020. CCP records reflect that HUGGINS has remained in CCP custody, without release, through at least September 2, 2020.

14. HUGGINS's CCP Commitment Sheet identifies PATRICE HAWTHORNE as HUGGINS's mother and lists HAWTHORNE's telephone number as 484-356-6427.

15. CCP provided recordings of a series of prison phone calls between HUGGINS and HAWTHORNE. In each of these recorded calls, HUGGINS used his CCP inmate PIN (67646) to call HAWTHORNE at 484-356-6427. During the calls, the speakers referred to one another as "Kenny" and "Mom."

16. During one of those CCP recorded calls on July 10, 2020, at 8:33 p.m. EST, HUGGINS asked HAWTHORNE for his social security number. When HAWTHORNE asked HUGGINS why he needed the number, he informed her, "I'm doing unemployment."

17. In a subsequent recorded call the same evening, at 8:52 p.m., HUGGINS asked HAWTHORNE "how much you think I can get" in unemployment benefits; HAWTHORNE responded, "It depends how far they filed back . . . . The further you file back, the more you get." HUGGINS replied, "How much you get?," to which HAWTHORNE answered, "I don't get unemployment, I quit my job." When HUGGINS then asked, "So how back should I tell them to file for?," HAWTHORNE replied, "Whoever's doing it will know what to do. Whoever's doing it will know if they gonna file all the way back to 1826, they'll know what to do."

HAWTHORNE then suggested, "Why you ain't get [Person 1] to do it? . . . She's doing all people." She continued, "[Person 1] asked me why didn't I do yours, I told her I didn't want to get involved." HUGGINS agreed and noted, "I want [Person 1] to do it." HAWTHORNE advised HUGGINS not to use Person 1's address because "she's got enough coming to her."

      18.    In a third recorded call that night, at 8:59 p.m., HAWTHORNE asked HUGGINS, "where you gonna get it sent to?" HUGGINS suggested using Person 2's address and asked HAWTHORNE, "Can you ask [Person 2]?" HAWTHORNE responded, "I'll text her."[2] HAWTHORNE then told HUGGINS that Person 2 had agreed; Person 1 had not yet responded but HAWTHORNE assured HUGGINS, "she'll do it, she ain't gonna say no." HUGGINS then asked HAWTHORNE to "text [Person 1] all my information." HAWTHORNE assured HUGGINS that "[Person 1] knows how to do it so you can get the max amount." HUGGINS pleaded with HAWTHORNE, "Please handle this for me Mom, I need you to stay on top of it for me, please. . . . Just go through [Person 1], but please stay on top of her about it."

---

[2] As explained in greater detail below, on September 22, 2020, an iPhone with associated telephone number 484-356-6427 was seized from HAWTHORNE's home during the execution of a federal search warrant. Among the text messages preserved on HAWTHORNE's phone is the following exchange between HAWTHORNE and a contact referred to as Person 2, which took place on July 10, 2020, beginning at 9:01 p.m.:

    HAWTHORNE: Kenny said can he get a unemployment check sent to your house and he will pay

    Person 2:      He can

    HAWTHORNE: Ok

    Person 2:      He don't have to give anything

    HAWTHORNE: LOL he is any way I said and he said

                   What's your address

    Person 2:      XXX e Lincoln highway

5

19. In a recorded call on July 11, 2020, at 1:21 p.m., HUGGINS asked HAWTHORNE, "[Person 1] answer you back?" HAWTHORNE replied "Yes," and told HUGGINS that Person 1 "said okay." HUGGINS then asked, "How much you think she gonna want?" HAWTHORNE responded, "I don't know. You gotta just wait and see, she'll let you know."

20. In a recorded call on July 13, 2020, at 7:00 p.m., HUGGINS asked HAWTHORNE to "get in touch with [Person 1] to make sure she do it today because you know it's ready to stop in the next couple of days." HAWTHORNE told HUGGINS she "gave [Person 1] all your information" and would "text her and see if she did it." HUGGINS noted, "I really want [Person 1] to do it cause she's gonna do it the right way."

21. That same evening (July 13, 2020), at 7:41:58 p.m. EST, an application for PA PUA benefits was submitted via the PUA website in the name of KENNETH L. HUGGINS, JR. The application alleged that HUGGINS had been unemployed due to the COVID-19 pandemic since April 2, 2020.[3] The social security number and date of birth on the PUA application matched the social security number and date of birth in CCP records for inmate HUGGINS.

22. The PUA application states that HUGGINS is "self-employed, or the owner, or operator of a business," and had worked as a "Gig Worker" through April 1, 2020. The PUA application further purports that HUGGINS was forced to quit his job "as a direct result of COVID-19." In response to the question on the PUA application that reads, "If offered a job, are you able and available to accept it?," HUGGINS's PUA application states, "Yes."

---

[3] As explained above, CCP records reflect that HUGGINS entered CCP custody on January 1, 2020, and has remained in CCP custody through at least September 2, 2020.

23. According to PA DLI PUA claims data, HUGGINS's PUA application was submitted from IP address 69.242.126.78. This IP address was assigned by the Internet Service Provider Comcast Cable Communications (Comcast). On August 27, 2020, a subpoena was served on Comcast, requesting subscriber records pertaining to IP address 69.242.126.78 as of July 13, 2020, at 7:41:58 p.m. EST. Information provided by Comcast reflects that the subscriber assigned this IP address from May 30, 2020, through August 20, 2020, was Person 1, with a service and billing address listed as XXX Lumber Street, Coatesville, PA 19320.

24. According to PA DLI PUA claims data, an application for PUA benefits was submitted in the name of Person 1 on or around June 5, 2020, also from IP address 69.242.126.78—the same IP address used to file HUGGINS's PUA claim. The mailing address for Person 1's PUA claim is listed on the application as XXX Lumber Street, Coatesville, PA 19320.[4]

25. The primary e-mail address for HUGGINS's PUA claim is listed on the application as KNITTING12@aol.com. On August 17, 2020, a subpoena was served on Oath Inc. requesting subscriber information associated with the account KNITTING12@aol.com. Information provided by Oath Inc. reflects that the subscriber of the account is HAWTHORNE, with associated phone number 484-356-6427.

26. That same phone number (484-356-6427) is listed on the application as the primary phone number for HUGGINS's PUA claim.

27. The mailing address for HUGGINS's PUA claim is listed on the application as XXX E. Lincoln Highway, Coatesville, PA 19320. Public records checks reflect that Person 2 was living at this address in July 2020.

---

[4] The primary phone number listed on Person 1's PUA application is XXX-XXX-2525.

28.     In a recorded call on July 15, 2020, at 1:29 p.m., HAWTHORNE informed HUGGINS that "[Person 1] did the thing; she says you're supposed to get back all together $11,000.00." She informed HUGGINS that "people usually charge 10% of what they get you back, so that's what you gotta give [Person 1]"—"10% of what she get you every week." HAWTHORNE asked HUGGINS, "How much you giving me?" He replied, "I got a stack for you and her." HAWTHORNE explained, "[Person 1] gotta do it for you every week cause I don't know how to do it." HUGGINS noted that another inmate on his cellblock first told him to have Person 1 submit his application; HAWTHORNE responded, "She's been getting a lot of people."

29.     On August 26, 2020, a subpoena was served on US Bank National Association (US Bank), requesting, *inter alia*, detailed transaction histories for any US Bank, PA DLI-issued unemployment debit card issued to HUGGINS. Information provided by US Bank reflects that on July 17, 2020, two payments, in the amount of $9,000.00 and $2,925.00, were loaded on US Bank VISA debit card, with Card ID ending -7165, with reference "COMM OF PA UCD . . . UCBENEFITS – Payee: KENNETH HUGGINS JR."[5]

30.     In a recorded call at 7:49 p.m. on July 15, 2020, HUGGINS asked HAWTHORNE, "Can you get [Person 1's] address for me cause I'm ready to send her a letter cause I got one person that she can do and she can take a cut—it's my cellie but I don't want to say the name over the phone." HAWTHORNE responded, "just send it to me and I'll text her." HAWTHORNE confirmed her address as 310 Macleren Drive, Middletown, DE 19709. HUGGINS repeated, "She can take a cut and I'll give you some just for doing it."

---

[5] On July 22, 2020, two additional payments, in the amount of $600.00 and $195.00, were loaded onto the same debit card, for a total of $12,720 in PUA benefits.

8

HAWTHORNE responded, "Okay." HUGGINS continued, "When you get the card . . . if you know somebody who you can get the card sent to, you can just get it sent to there and I'm gonna just have you send a certain amount of money to his books, you get what I'm sayin', cause he don't got nobody on the street that he can trust."

31. In a recorded call on July 16, 2020, at 12:33 p.m., HUGGINS informed HAWTHORNE, "I sent you two people . . . I sent you all their information except their address . . . They don't have no people that they can trust on the outside so they just want me to put $1,000 apiece on their books and I can keep the rest." HUGGINS specified that he sent the "two separate letters" "out last night." HUGGINS asked, "Can you try to find an address for me for both of them?" HAWTHORNE replied, "I'm gonna see if [Person 1] can, okay."

32. In a recorded call at 8:34 p.m. that evening, HUGGINS instructed HAWTHORNE, "Go to the notes on your phone so I can give you this name real quick, there's two middle names." HUGGINS went on, "I wrote one of the names down on a request slip, the ones you get in jail. The middle name to the one on the request slip is 'Lee.' . . . One of 'em I sent on a request slip and the other one I sent on a lined piece of paper. The one that's on the lined piece of paper is 'Joseph.'"

33. In a recorded call on July 17, 2020, at 7:00 p.m., HAWTHORNE informed HUGGINS that she had spoken with Person 1 and that "[Person 1] says that we should wait until your card comes before we use [Person 2's]" address for the other two applications;[6] she added,

---

[6] On July 17, 2020, beginning at 4:12 PM, HAWTHORNE exchanged the following text messages with Person 2:

HAWTHORNE: Lol Kenny Celli is looking for a address to send his check for a stack lol

2 People

Person 2: Stoppp

9

"we don't know nobody else's you can use."[7] Concerned about using a single address too many times, HAWTHORNE explained that Person 1's "boyfriend and her daughter was getting it both to [Person 1's] house and they cut their checks off." HUGGINS requested, "When you get my card, I want you to take all my money off my card." HAWTHORNE assured him, "I am gonna take it all off and put it in my drawer."

34. In a recorded call on July 23, 2020, at 1:26 p.m. EST, HAWTHORNE informed HUGGINS, "we just checked your card—your card's on the way, yours went through." HUGGINS told HAWTHORNE, "you take a stack, give [Person 1] a stack, and give [Person 2] $250"; she agreed. HAWTHORNE mentioned that her plan was to "get everything off yours so there won't be anything left on yours."

35. According to US Bank records, the debit card was mailed on July 23, 2020, to XXX E. Lincoln Highway, Coatesville, PA 19320. The card was never activated.

---

|  |  |
|---|---|
|  | And you can't have more then one person getting that sent to one address |
| HAWTHORNE: | I was going to ask [Person 1] if so you could get them all sent to yours and that's 2 stacks for you |
| Person 2: | Girl well yess I will do it |
| HAWTHORNE: | Give me 2 check because there info will be in my mail today |
| Person 2: | Yes I will do it |
| HAWTHORNE: | Some girl said people can have the same address so i will let [Person 1] send them to your house ok |
|  | Check your mail Kenny's should come soon |
|  | Hopefully |

[7] In a recorded call on July 23, 2020, at 1:26 p.m. EST, HAWTHORNE explained to HUGGINS that she was not able to confirm addresses for these two individuals until it was too late, given that the PUA program had ended on July 21, 2020.

36.  In a recorded call on August 14, 2020, at 1:21 p.m. EST, HAWTHORNE informed HUGGINS that his debit card had not yet arrived and she suspected it may have been "snagged." HAWTHORNE stated that she would ask Person 1 to check the online status. HAWTHORNE told HUGGINS that a username and password are necessary to access the account online and only Person 1 had that information for HUGGINS's application.

37.  US Bank records reflect that on August 25, 2020, a replacement US Bank VISA debit card (with Card ID ending -9233) was issued to HUGGINS, with the reference, "Rush Overnight shipping . . . Expedited Card Replacement." A total of $12,720.00 was loaded onto the replacement debit card, less a $15.00 fee. On August 26, 2020, the replacement debit card was mailed to HUGGINS.[8]

38.  According to US Bank records, the replacement debit card was activated on August 27, 2020. Among the first transactions on the debit card are two August 27, 2020, money transfers to a CashApp account associated with Person 1; the first transfer is for $850.00 and the second is for $1,000. US Bank records reflect an attempted $400.00 transfer to a CashApp account associated with Person 2 a few minutes later. A number of transactions between August 28, 2020 and August 31, 2020 reflect purchases at McDonalds, Wal-Mart, and other retail

---

[8] Among the text messages preserved on HAWTHORNE's phone is the following August 21, 2020 exchange between HAWTHORNE and Person 2:

| | |
|---|---|
| HAWTHORNE: | Hey tomorrow i am going to call the card people and ask them if the [sic] can expedite a card for $15 ok. hopefully that works |
| Person 2: | Yess I went out there late today and checked it wasn't nothing there |
| HAWTHORNE: | Ok i wish i had a guy that could talk and say that the card did not come i know 2 people did it and they expedited it |
| Person 2: | Ok ok so that should work |

11

locations in Middletown, Delaware. On August 31, 2020, there was also a $500.00 cash withdrawal from a PNC Bank located in Middletown, Delaware.

39. In a recorded call on September 1, 2020, at 12:44 p.m., HAWTHORNE informed HUGGINS, "I had to get [Person 3] to act like you. It was a freaking disaster. We finally got it, finally. But I did pay [Person 3] $200 okay? So the rest of it I've got to do what you told me to do every day—take it off, take it off, take it off. But I paid [Person 2], I paid [Person 1], and then you gave me mine. I had to give [Person 3] 200 because I had to, we needed someone to act like you." Later during the call, HAWTHORNE explained, "This is what happened: I gave [Person 2] 4, I gave [Person 3] 2, cause we had to have everything expedited, UPS and all this shit was involved."[9]

40. On September 21, 2020, this Affiant applied for and was granted a federal search warrant (Case No. 20-338-M), authorized by Chief United States Magistrate Judge Mary Pat Thynge, District of Delaware, for 310 Macleren Drive, Middletown, DE 19709, to search for and seize evidence of violations of 18 U.S.C. § 1349, among other statutes.

41. On September 22, the federal search warrant was executed at 310 Macleren Drive, Middletown, DE 19709. HAWTHORNE was present at the time of the search but declined to be interviewed by agents. During the search, agents recovered $1,060.00 in U.S. currency (approximately $700 of which was stored in a dresser drawer in HAWTHORNE's bedroom), and two cellular phones. Agents also recovered an envelope addressed to HAWTHORNE with return address "KENNETH HUGGINS 67646" at Chester County Prison. The envelope is postmarked July 16, 2020. Inside the envelope, on a lined piece of paper, is personal information for Person

---

[9] During this same call, HAWTHORNE mentioned to HUGGINS that his sister had also received unemployment. HAWTHORNE emphasized, "[She's] getting a part because, see, [she] really worked, you didn't."

4, a CCP inmate (including his social security number (XXX-XX-XX74) and date of birth (02/XX/1982)). Agents also recovered a CCP "Inmate Request" slip inside the same envelope; written on the back of that slip is personal information for Person 5, another CCP inmate (including his social security number (XXX-XX-XX49) and date of birth (01/XX/1986)).[10]

42. During the search, agents seized two cellular phones. HAWTHORNE provided agents with the passcode to one of the phones, an iPhone with associated telephone number 484-356-6427. Included in the iPhone's list of contacts are Person 1 and Person 2. The first of three phone numbers listed for Person 1 is XXX-XXX-2525—the same telephone number listed on Person 1's PUA application. Agents reviewed communications between HAWTHORNE and Person 1 and noted that all text messages exchanged prior to September 12, 2020 had been deleted from HAWTHORNE's iPhone.[11]

43. Many text messages between HAWTHORNE and Person 2, however, were preserved on HAWTHORNE's iPhone. Beginning at 8:34 a.m. on August 27, 2020—the day that HUGGINS's replacement US Bank VISA debit card was activated—HAWTHORNE and Person 2 had the following exchange via text message:

| HAWTHORNE: | Hi! I am in town trying to get the tracking number |
| Person 2: | Ok |
| HAWTHORNE: | The tracking number is not on there yet☹☹ I am on your porch |
| Person 2: | Hopefully it comes ☺☺ |
| HAWTHORNE: | Lol got it lol (10:17 a.m.) |

---

[10] On September 23, 2020, PA DLI confirmed that there were no PUA claims submitted in either Person 4's name or Person 5's name.

[11] On September 11, 2020, IRS agents interrogated several CCP inmates regarding their alleged involvement in PUA fraud. HUGGINS was not interviewed.

|  | Send me a cash app request for $400 |
|---|---|
|  | Wait o [sic] have to set up a cash app for his card |
|  | I ain't leaving town until I get it figured out ok |
| Person 2: | Ok lmk |
| HAWTHORNE: | Request it from mine ok |
| Person 2: | Ok |
|  | What is it |
| HAWTHORNE: | $Patricehawthorne |
| Person 2: | I sent it |
| HAWTHORNE: | Got it |

44. The CashApp application on HAWTHORNE's iPhone, which is logged into the account "$PatriceHawthorne," reflects the following transactions: a transfer of $850 and $1,000 to Person 1 (both on August 27, 2020), followed by two failed attempts to transfer $400 to Person 2.

45. Based on the information set forth above, there is probable cause to believe that HUGGINS and HAWTHORNE conspired to submit a fraudulent PUA application for HUGGINS, knowing that HUGGINS was incarcerated and unable to accept work and, therefore, was not eligible to receive PUA benefits. Specifically, there is probable cause to believe that, at HUGGINS's request and direction, HAWTHORNE facilitated the submission of HUGGINS's fraudulent PUA application by providing Person 1 with the personally identifiable information necessary to complete and submit a PUA application in HUGGINS's name, and by arranging for HUGGINS's PUA benefit payments to be mailed to Person 2.

## **CONCLUSION**

46.     Based on the above information, this Affiant submits that there is probable cause to believe that HUGGINS and HAWTHORNE conspired to commit mail fraud, in violation of 18 U.S.C. § 1349.

Respectfully submitted,

/s/ John Christopher Vacanti
John Christopher Vacanti
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
on this /s/ day of October, 2020

_____
HONORABLE HENRY S. PERKIN
UNITED STATES MAGISTRATE JUDGE

15